UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HARRY C. WEAVER, JR., | ) | |
| *Petitioner*, | ) | Case No. 3:23-cv-394 |
| v. | ) | Judge Atchley |
| BRIAN ELLER, | ) | Magistrate Judge McCook |
| *Respondent*. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Harry C. Weaver, Jr., is a Tennessee inmate proceeding pro se on a federal habeas petition under 28 U.S.C. § 2254 in which he challenges the constitutionality of his confinement under Sullivan County judgments of conviction for first-degree murder, felony murder, three counts of aggravated assault, reckless endangerment, and aggravated domestic assault [Doc. 2].[1] Having considered the submissions of the parties, the state-court record, and the law applicable to Petitioner's claims, the Court finds an evidentiary hearing is not warranted,[2] the petition will be **DENIED**, and this action will be **DISMISSED**.

---

[1] Petitioner's felony-murder and aggravated-domestic-assault convictions were merged into his first-degree murder conviction [Doc. 9-1 at 49, 63].

[2] "If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules"); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing an evidentiary hearing not required where record refutes the petitioner's allegations or otherwise precludes habeas relief).

## I. SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

On February 13, 2019, Petitioner entered the dental office of Dr. David Guy, where his estranged wife ("the victim") was employed and shot her multiple times [Doc. 9-5 at 3]. Petitioner also pointed the gun at Dr. Guy, employee Sabrina Steele, and patient Larry Seagroves [*Id.*]. Mr. Seagroves was armed and shot Petitioner multiple times [*Id.*]. Petitioner was seriously wounded but survived [*Id.*]. The victim died [*Id.*].

A July 19, 2019, presentment charged Petitioner with nine separate counts related to the incident: first-degree murder, felony murder, especially aggravated kidnapping, attempted second-degree murder, three counts of aggravated assault, reckless endangerment, and aggravated domestic assault [Doc. 9-1 at 3–7]. Petitioner subsequently entered into a plea agreement with the State, the provisions of which were considered at a guilty-plea hearing held on October 29, 2019 [Doc. 9-1 at 13; Doc. 9-3].

At the guilty-plea hearing, the trial court questioned Petitioner regarding the rights he was waiving by pleading guilty, including his right to a jury trial, cross-examination of witnesses, and appeal rights [Doc. 9-3 at 12–13]. Petitioner acknowledged that he was pleading guilty and waiving his rights both freely and voluntarily [*Id.* at 14]. When asked on two separate occasions whether he was satisfied with the performance of court-appointed counsel Andrew Gibbons and Dustin Franklin, Petitioner stated, "I think they have done their best" [*Id.* at 4, 7; *see also* Doc. 9-2 at 9]. The trial court accepted the plea, sentenced Petitioner to life in prison, and entered the judgments of conviction on October 29, 2019 [Doc. 9-3 at 16, 23–40].

On September 15, 2020, Petitioner filed a pro se petition for post-conviction relief alleging that his guilty plea was involuntary, and trial counsel rendered ineffective assistance for various alleged deficiencies, including a failure to seek further mental evaluations and failure to consider

mitigating evidence [Doc. 9-1 at 34–43]. Petitioner was appointed post-conviction counsel, who filed a supplemental petition alleging that Mr. Gibbons rendered ineffective assistance due to the following circumstances: his failure to properly consider Petitioner's "advanced age" and "fragile health" in discussing Petitioner's plea; his failure to explain the different levels of culpability for homicide; his conflict of interest due to his relationship with Petitioner's son-in-law; and his coercion of the guilty plea by stressing that Petitioner should not put his family through a trial [*Id.* at 80–88].

On December 7, 2021, the post-conviction court held an evidentiary hearing [Doc. 9-2]. At the beginning of the hearing, the trial court ruled, over Petitioner's objection, that trial counsel would be permitted to remain in the courtroom during the presentation of Petitioner's case [*Id.* at 5]. The Tennessee Court of Criminal Appeals ("TCCA") recounted the evidence presented at that hearing (and the post-conviction court's subsequent findings) as follows:

> [T]he petitioner testified that at the time of the shooting, a divorce was pending between himself and the victim. He was critically injured by the gunshot wounds that he received after his shooting the victim, and while in jail following his hospitalization, he was confined to a wheelchair until approximately May 2019. When trial counsel informed him that he would be convicted of offenses stemming from the shooting, the petitioner became "frustrated" and "distraught." He stated that he experienced "enormous pressure . . . devastating pressure" when trial counsel told him that the petitioner's son-in-law had said that the family wanted the petitioner to plead to a life sentence. The petitioner said that trial counsel failed to discuss the lesser degrees of homicide with him, but the petitioner acknowledged that he was evaluated by a mental health professional.
>
> Eventually, the petitioner discussed a possible guilty plea with trial counsel. The petitioner posed two objections to pleading guilty. First, he referenced a collection of 12 to 15 guns that the police had taken from his home, and he wanted the guns returned to his son. Second, he did not want to plead to the kidnapping charges. When informed that the State had returned the guns to his son and had agreed to dismiss the kidnapping charges, the petitioner agreed to plead guilty to first degree murder and a sentence of life in prison. The petitioner acknowledged that he signed the written plea agreement and initialed the areas explaining his rights but maintained that he did so "to end my frustration."

3

During the evidentiary hearing, trial counsel testified that he and co-counsel were members of the public defender's office who were appointed to represent the petitioner on the charges. Trial counsel learned that one of his friends was the employee of the petitioner's son-in-law. Trial counsel spoke to the petitioner's son-in-law at a wedding and later at a cookout, and the petitioner's son-in-law informed him that the family did not want the State to seek the death penalty. Trial counsel informed the petitioner of the connection with his son-in-law, and the petitioner declined to ask trial counsel to withdraw. Trial counsel said the situation posed no ethical issue.

Trial counsel testified that he and the petitioner discussed the number of years that the petitioner would be required to serve if convicted and his age when he would be eligible for parole. Trial counsel told the petitioner that he would not live long enough to be released from prison, but the petitioner still wanted a sentence that included parole eligibility. Trial counsel stated that he informed the petitioner that there was no issue in the case regarding identity since the petitioner shot his wife in front of multiple witnesses. Trial counsel said that he and the petitioner discussed the different levels of culpability related to homicides, including "heat of passion." Trial counsel informed the petitioner that he did not believe any argument that the petitioner killed his wife in the "heat of passion" would be successful because the petitioner gave a statement to the police in which he admitted that he planned the shooting.

Trial counsel testified that the petitioner was interested in a defense that sullied the victim. Trial counsel advised against such a tactic because it would not be effective and would only serve to cause the family distress upon hearing evidence of the victim's bad character. Trial counsel denied telling the petitioner that he should avoid putting his family through a trial in general, only that the petitioner's family should not necessarily have to hear the petitioner's blaming the victim.

Trial counsel hired Dr. Eric Engum to examine the petitioner and to determine whether a defense of mental incapacity could be supported. Dr. Engum met with the petitioner for three days and informed trial counsel that no such defense could be supported. Dr. Engum described the petitioner as an extreme narcissist. When informed that the defense could not use Dr. Engum, the petitioner insisted on finding a doctor who would help him at trial. Trial counsel declined to seek another expert because, in part, he did not believe a defense of mental incapacity existed, and he stated that a search for another expert would have been a waste of time.

Trial counsel testified that the petitioner declined to enter into a plea agreement unless the guns belonging to his son that the police officers had seized from the petitioner's home were returned to his son and the kidnapping charge and the charges involving Ms. Steele were dismissed. The State returned the guns to the petitioner's son and agreed to dismiss the kidnapping charge and a charge involving Ms. Steele. Trial counsel said that when reviewing the plea agreement, the petitioner exhibited no hesitation or frustration; however, trial counsel had to

4

Case 3:23-cv-00394-CEA-JEM   Document 13   Filed 10/07/24   Page 4 of 12   PageID #: 454

disabuse the petitioner of the notion that, once in prison, the petitioner would be able to persuade the warden to shorten his sentence. The petitioner signed and initialed the plea agreement, indicating that he understood the terms of the agreement.

At the conclusion of the hearing, the post-conviction court took the matter under advisement, and on February 2, 2022, the court entered an order denying post-conviction relief. The court credited trial counsel's testimony concerning his preparations for trial and the report submitted to him by Dr. Engum, and the court found that trial counsel informed the petitioner that a "heat of passion" defense would be inapt because the petitioner had told the police that he "had planned the whole thing out." The court characterized trial counsel and co-counsel as very competent and found that trial counsel was "extremely credible as opposed to the petitioner." The court also found that trial counsel "very competently discussed [the plea] with the petitioner and that [the petitioner] fully understood its consequences, and made his plea voluntarily."

*See Weaver v. State*, No. E2022-00228-CCA-R3-PC, 2023 WL 3221913, at *1 (Tenn. Crim. App. May 3, 2023), *perm. app. denied* (Tenn. Sept. 11, 2023). On appeal, the TCCA affirmed the trial court's judgment. *Id.* at *1. On September 11, 2023, the Tennessee Supreme Court denied discretionary review [Doc. 9-6 at 2].

Petitioner subsequently filed a timely federal habeas petition [Doc. 2] and memorandum in support [Doc. 3], raising the following two claims, as paraphrased by the Court: (1) trial counsel performed ineffectively in failing to properly advise Petitioner regarding the plea agreement, and (2) the post-conviction court erred in failing to sequester former trial counsel during Petitioner's testimony at the post-conviction hearing [Docs. 2, 3]. This Court ordered Respondent to file a response to the petition and the state-court record [Doc. 5]. Respondent subsequently filed the state-court record [Doc. 9] and his response to the petition [Doc. 10], to which Petitioner replied [Doc. 11]. This matter is now ripe for review.

II.   LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any

5

claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Review under § 2254(d) is limited to the record that was presented to the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–83 (2011). And when evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner. *Williams*, 529 U.S. at 407–08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Williams*, 529 U.S. at 410–11. Rather, this Court may grant relief for a claim decided on its merits in state court only where the petitioner demonstrates that the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Therefore, "so long as 'fairminded jurists could disagree' on the correctness

6

of the state' court's decision[,]" federal habeas relief is not available. *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). With these standards in mind, the Court turns to a consideration of Petitioner's claims.

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

Petitioner maintains that trial counsel rendered ineffective assistance by failing to properly advise Petitioner regarding his plea deal [Doc. 2 at 4]. Specifically, he claims that counsel did not properly advise him of his charges, the consequences he faced, or any possible defenses, nor did he investigate or prepare a defense [Doc. 3 at 6]. Petitioner also notes that he was heavily medicated, "voiced significant discontent with counsel's performance" at the guilty plea hearing, and, at the age of sixty-three, gained nothing by pleading guilty and receiving a life sentence [*Id.* at 5–6].

"[G]uilty pleas must be entered knowingly, voluntarily, and intelligently in order to be constitutionally effective." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citation and internal quotation marks omitted). Thus, for a guilty plea to be valid, a defendant must "understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick*, 723 F.3d at 639 (citation omitted).

The standard set forth in *Strickland v. Washington*, which governs ineffective-assistance claims generally, also governs challenges "to guilty pleas based on ineffective assistance of

7

counsel." *Lockhart*, 474 U.S. at 58. And under *Strickland*, a petitioner must satisfy a conjunctive, two-pronged test to establish he received constitutionally ineffective assistance: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. 466 U.S. at 687. Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687–88. But a reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id*. at 687, 694. Specifically, in a guilty-plea context, a Petitioner establishes prejudice by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. And "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.*

Petitioner presented this claim to the TCCA, which rejected it on its merits, finding as follows:

> We . . . conclude that the petitioner failed to establish that trial counsel was ineffective. Trial counsel testified that he discussed with the petitioner the

8

practicable effect of a sentence of imprisonment due to the petitioner's age, the different levels of culpability related to homicides, and any possible defenses. Trial counsel concluded that "heat of passion" was not a viable defense due to the petitioner's admission to the police that the shooting was planned. The petitioner was evaluated by a mental health expert, who determined that a defense of mental incapacity could not be supported. Trial counsel testified that he reviewed the terms of the plea agreement with the petitioner, that the petitioner exhibited no hesitation or frustration, and that the petitioner signed and initialed the plea agreement, indicating that he understood the terms of the agreement. Trial counsel testified that he did not tell the petitioner that he should avoid putting his family through a trial. During the plea hearing, the petitioner affirmed that he understood the terms of the plea agreement and that he was waiving his rights freely and voluntarily. The post-conviction court credited trial counsel's testimony and found that trial counsel "very competently discussed [the plea] with the petitioner and that [the petitioner] fully understood its consequences, and made his plea voluntarily." The evidence does not preponderate against the post-conviction court's findings. We conclude that trial counsel's performance was not deficient and that the petitioner knowingly and voluntarily entered the plea agreement. Accordingly, the petitioner is not entitled to relief.

*Weaver*, 2023 WL 3221913, at *4.

Petitioner has not established that the rejection of this claim was unreasonable, nor has he demonstrated a reasonable likelihood that he would have chosen to go to trial if counsel had handled the case any differently. The post-conviction court credited trial counsel's testimony that he discussed the terms of the plea with Petitioner, offered sound advice in the face of overwhelming evidence against Petitioner, and that Petitioner subsequently entered a valid guilty plea [*See* Doc. 9-1 at 98]. And "federal habeas courts do not have license, under § 2254(d), to redetermine witness credibility, whose demeanor is observed exclusively by the state court." *Givens v. Yukins*, 238 F.3d 420, 2000 WL 1828484, at *10 (6th Cir. Dec. 5, 2000) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

And, as noted by the state courts, trial counsel retrained an expert to explore a mental incapacity defense for Petitioner, but the expert found Petitioner did not qualify for any such defense [*Id.* at 40–41]. Trial counsel also reasonably advised Petitioner that a "heat of passion"

9

defense would be unsuccessful considering Petitioner's statement to police that he planned the crime [*Id.* at 40]. Petitioner testified on three different occasions during the plea hearing that he understood the life-sentence term of his plea deal [Doc. 9-3 at 8, 10, 12]. The record also confirms that Petitioner pleaded guilty in exchange for certain concessions; namely, that 12–15 firearms seized from Petitioner's home were returned to Petitioner's son, and the State dropped two charges against him [*Id.* at 43–44, 45]. And at the guilty plea hearing, Petitioner stated "I think they've done their best" when the trial court asked if Petitioner was satisfied with this representation [Doc. 9-2 at 7].

Thus, the TCCA reasonably found that trial counsel was not deficient, and that the evidence supported the post-conviction court's finding that Petitioner suffered no prejudice. Accordingly, the decision rejecting this claim is not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor is it based on an unreasonable determination of facts in light of the evidence presented.

**B.     Failure to Sequester Trial Counsel**

Next, Petitioner asserts that the post-conviction court erred by ignoring Petitioner's invocation of Rule 615 of the Tennessee Rules of Evidence and allowing his trial counsel to remain in the courtroom for Petitioner's post-conviction hearing testimony, which occurred before trial counsel's [Doc. 2 at 6–7; Doc. 3 at 2–3]. The TCCA denied this claim on appeal. *Weaver*, 2023 WL 3221913, at *4.

However, a claim alleging error in a post-conviction proceeding is not a cognizable basis for federal habeas relief. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." (citations omitted)). And habeas relief is only available for claims that a

petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Petitioner alleges that his post-conviction proceedings violated an evidentiary rule under Tennessee law, but a claim of state-law error is an insufficient basis on which to support a habeas claim. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding "that [an evidentiary ruling] was allegedly incorrect under state law is not a basis for habeas relief"). Finally, "the Supreme Court has never held that the failure to exclude witnesses can violate due process." *Thorne v. Hollway*, No. 3:14-cv-0695, 2014 WL 4411680, at *27 (M.D. Tenn. Sept. 8, 2014) (citing *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008)). Therefore, this claim is not cognizable and otherwise fails to state a claim warranting federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And to obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

For the reasons set forth above, Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, the instant petition will be **DENIED**, and this action is **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**. Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**